## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

INGRAM ENTERPRISES, INC.
d/b/a FIREWORKS OVER
AMERICA

       Plaintiff,

v.

SHOWTIME FIREWORKS
ORLANDO LLC, a Florida limited
liability company; SHOWTIME
FIREWORKS & SOUVENIRS LLC, a
Florida limited liability company

       Defendants

Case No.:  6:23-cv-00818-WWB-RMN

### PLAINTIFF'S MOTION FOR FINAL DEFAULT JUDGMENT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF

Pursuant to Rules 55(b) and 58(d) of the Federal Rules of Civil Procedure, Middle District of Florida Local Rule 1.10(c), and this Court's Orders dated July 24, 2023 and July 28, 2023 (Docs. 13 and 15), Plaintiff moves this Court for the entry of final default judgment in favor of Plaintiff and against Defendants SHOWTIME FIREWORKS ORLANDO LLC and SHOWTIME FIREWORKS & SOUVENIRS LLC. In support thereof, Plaintiff submits the following Memorandum of Law.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................3

MEMORANDUM OF LAW.......................................................................5

  I.   Introduction ....................................................................................5

  II.   Statement of Facts ..........................................................................6

    a.   Plaintiff's Trademarks ................................................................6

    b.   Defendants' Infringing Acts........................................................7

  III.   Argument......................................................................................9

    a.   Default Judgment Should be Entered Against Defendants .........9

    b.   This Court's Jurisdiction Over Claims and Parties ......................9

    c.   Plaintiff's Factual Allegations Establish Defendants' Liability ...................10

      i.   Federal Trademark Infringement (Counts I and II) and Common Law Unfair Competition (Counts III and IV)...................10

      ii.   Federal Trademark Counterfeiting (Counts V and VI)............11

      iii.   Federal Cyberpiracy (Count VII) ............................................12

    d.   Plaintiff's Requested Relief Should be Granted .........................13

      i.   Entry of a Permanent Injunction is Appropriate .....................13

      ii.   Attorneys' Fees and Costs.......................................................16

      iii.   Damages for Trademark Counterfeiting (Counts V and VI)....................17

      iv.   Damages for Cyberpiracy (Count VII) ...................................20

  IV.   Conclusion...................................................................................21

CERTIFICATE OF SERVICE................................................................22

## TABLE OF AUTHORITIES

**Cases**

*24-7 Bright Star Healthcare, LLC v. Brightstars Helping Hands LLC*,
 WL 5566570 (M.D. Fla. July 24, 2023) ..................................................8, 12, 14, 15
*Alliance Metals, Inc., of Atlanta v. Hinely Indus., Inc.*,
 222 F.3d 895 (11th Cir. 2000)...................................................................................10
*Arista Recs., Inc. v. Beker Enters., Inc.*,
 298 F. Supp. 2d 1310 (S.D. Fla. 2003) ....................................................................18
*Aronowitz v. Health-Chem Corp.*,
 513 F.3d 1229 (11th Cir. 2008)................................................................................10
*Bavaro Palace, S.A. v. Vacation Tours, Inc.*,
 203 Fed. Appx. 252, 2006 WL 2847233 (11th Cir. 2006) ......................................11
*Bentley Motors Corp. v. McEntegart*,
 976 F. Supp. 2d 1297 (M.D. Fla. 2013) ..................................................................11
*Buchanan v. Bowman*,
 820 F.2d 359 (11th Cir. 1987)....................................................................................8
*Cable/Home Commc'n Corp. v. Network Prod., Inc.*,
 902 F.2d 829 (11th Cir. 1990)..................................................................................17
*Chanel, Inc. v. besumart.com*,
 240 F. Supp. 3d 1283 (S.D. Fla. 2016)..............................................................12, 18
*Chanel, Inc. v. Italian Activewear of Fla., Inc.*,
 931 F.2d 1472 (11th Cir.1991)..................................................................................11
*Chanel, Inc. v. Replicachanelbag*,
 362 F. Supp. 3d 1256 (S.D. Fla. 2019).....................................................................15
*Delta T, LLC v. Kale Fans America S.A. De C.V.*,
 2020 WL 1674328 (M.D. Fla. Feb. 25, 2020) ...........................................................9
*eBay, Inc. v. MercExchange, LLC*,
 547 U.S. 388, 126 S. Ct. 1837 L. Ed. 2d 641 (2006) ..............................................13
*Ford Motor Co. v. Cross*,
 441 F. Supp. 2d 837 (E.D. Mich. 2006) ...................................................................17
*Jackson v. Sturkie*,
 255 F. Supp. 2d 1096 (N.D. Cal. 2003)....................................................................12
*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*,
 51 F.3d 982 (11th Cir. 1995) ....................................................................................13
*McDonald's Corp. v. Robertson*,
 147 F.3d 1301 (11th Cir. 1998).................................................................................13
*Nakava LLKC v. South Pacific Elixir Company*,
 2020 WL 4601641 (S.D. Fla. Aug. 10, 2020) ...........................................................9
*Perry Ellis Int'l, Inc. v. URI Corp.*,
 No. 06-22020-CIV, 2007 WL 3047143 (S.D. Fla. Oct. 18, 2007)...........................18

*PetMed Express, Inc. v. Medpets.com*,
  336 F. Supp. 2d 1213 (S.D. Fla. 2004) ...................................................8, 10, 16, 17
*RCI TM Corp. v. R&R Venture Grp., LLC*,
  2015 WL 668715 (M.D. Fla. Feb. 17, 2015) .......................................................14
*Rolex Watch U.S.A., Inc. v. Forrester*, No.
  83-8381-CIV-PAINE, 1986 WL 15668 (S.D. Fla. Dec. 9, 1986).........................10
*S Holistic, LLC v. Purple Haze of Seminole, LLC*,
  2023 WL 3629705 (M.D. Fla. May 8, 2023), report and recommendation adopted,
  2023 WL 3620654 (M.D. Fla. May 24, 2023) .....................................................17
*Tobinick v. Novella*,
  884 F.3d 1110 (11th Cir. 2018) .........................................................................16

**Statutes**

15 U.S.C. § 1114(1)(a) ......................................................................................10
15 U.S.C. § 1116(a) ...........................................................................................13
15 U.S.C. § 1117(a) ...........................................................................................17
15 U.S.C. § 1117(c)............................................................................................ 17, 18
15 U.S.C. § 1117(c)(1) .......................................................................................18
15 U.S.C. § 1117(c)(2) .......................................................................................18
15 U.S.C. § 1117(d)............................................................................................21
15 U.S.C. § 1121................................................................................................9
15 U.S.C. § 1125(d) ...........................................................................................12
15 U.S.C. § 1125(d)(1)(c) ...................................................................................20
15 U.S.C. § 1127................................................................................................12
15 U.S.C.A. § 1114(1)(a).....................................................................................12
28 U.S.C. § 1331................................................................................................9
28 U.S.C. § 1338................................................................................................9
28 U.S.C. § 1367................................................................................................9

**Rules**

Fed. R. Civ. P. 55 ..............................................................................................9

# MEMORANDUM OF LAW

## I.  **Introduction**

Plaintiff initiated this action against Defendants through the filing of its Verified Complaint for federal trademark infringement (Counts I and II), common law unfair competition (Counts III and IV), federal trademark counterfeiting (Counts V and VI), and federal cyberpiracy (Count VII) on May 4, 2023 (Doc. 1). On July 21, 2023, Defendants filed a *pro se* Motion for Extension of Time to answer Plaintiff's Verified Complaint which was denied by this Court on July 24, 2023 (Docs. 12 and 13).[1] In this Court's Order dated July 24, 2023, Defendants were cautioned that they may not appear *pro se* and may not file motions before the Court until counsel is retained (Doc. 13). Defendants were also cautioned that failure to obtain counsel in a timely manner can result in entry of default and default judgment against them (Doc. 13). To avoid such a consequence, the Court encouraged Defendants to quickly retain counsel and begin defending this matter (Doc. 13). On August 28, 2023, Plaintiff's counsel, Mark Warzecha, had a telephone conference with the corporate representative for the Defendants, Adam Hernandez, in an unsuccessful attempt to amicably resolve this matter (See, Exhibit A, Declaration of Mark Warzecha in support of Plaintiff's Motion for Final Default Judgment (the "Warzecha Declaration"), ¶ 8). During the telephone conference, Mr. Warzecha also encouraged Mr. Hernandez to quickly retain counsel.

---

[1] In Defendants' *pro se* Motion for Extension of Time, Defendants admit to service of the Summons and Plaintiff's Verified Complaint on July 1, 2023 and acknowledge the deadline to file an answer or responsive pleading (Doc. 12).

(Warzecha Declaration, ¶ 9).

Nonetheless, Defendants remain in default and the prerequisites for a default judgment have been met. The time allowed for Defendants to respond to Plaintiff's Verified Complaint has expired. To date, Defendants have not been granted an extension of time to respond, nor have they filed an answer or other responsive pleading. Default was entered by the Clerk of Court on July 31, 2023 for failure to plead or otherwise defend, despite having been served with Plaintiff's Verified Complaint (Doc. 16). Plaintiff seeks default judgment finding Defendants liable on all counts of the Verified Complaint, entry of a permanent injunction, and an award of relief as described in the Verified Complaint (Doc. 1, pp. 14-17).

## II. <u>Statement of Facts</u>

### a. <u>Plaintiff's Trademarks</u>

Plaintiff, a leader in the consumer fireworks industry for over fifty years and one of the largest importers and distributors of fireworks in the United States, is based in Springfield, Missouri, with offices and distribution warehouses located nationwide, including in Missouri, Indiana, and South Carolina (Doc. 1, ¶¶ 9-10).

Plaintiff is the owner of all rights in and to United States Trademark Registration No. 1833282 on the Principal Register in the United States Patent and Trademark Office for the trademark "SHOWTIME" for class C fireworks and firecrackers (hereinafter the "'282 Mark"), which has been deemed incontestable by the United States Patent and Trademark Office (Doc. 1, ¶¶ 12-13). Plaintiff is also the owner of all rights and in and to United States Trademark Registration No. 6653781

on the Principal Register in the United States Patent and Trademark Office for the trademark "SHOWTIME" for retail store services featuring fireworks and firecrackers (hereinafter the "'781 Mark") (Doc. 1, ¶ 14). Plaintiff has used the '282 Mark in commerce throughout the United States in continuously since at least May 18, 1993 in connection with fireworks and firecrackers, and has used the '781 Mark since at least March 14, 2003 in connection with retail store services featuring fireworks and firecrackers (Doc. 1, ¶ 16). Plaintiff's '282 Mark and '781 Mark will be hereinafter referred to collectively as the "SHOWTIME Marks".

Plaintiff's SHOWTIME Marks are distinctive to both the consuming public and Plaintiff's trade, and Plaintiff has expended substantial time, money, and resources marketing and promoting its goods and services under the marks (Doc. 1, ¶ 18). The connection between the SHOWTIME Marks and Plaintiff has been strengthened in the public mind because of years of extensive use, promotion and advertising by Plaintiff (Doc. 1, ¶19). As a result of the high quality of the goods sold by Plaintiff, and as a result of the extensive promotion of that business, substantial goodwill has been developed in the SHOWTIME Marks and Plaintiff's brand has earned commercial success, recognition and acceptance (Doc. 1, ¶¶ 20-21).

### b. <u>Defendants' Infringing Acts</u>

As alleged by Plaintiff, admitted by Defendants by default, and established by the evidence submitted herewith, Defendants operate a business which sells and distributes firework products (Doc. 1, ¶ 24). Defendants primarily market and advertise their goods through a website located at

www.showtimefireworksorlando.com (the "Defendants' Website") and various social media channels, including but not limited to multiple accounts on Facebook and Instagram (the "Defendants' Social Media") (Doc. 1, ¶¶ 25-26, Exs. D, E, F, and Warzecha Declaration, Exhibits A-1 through A-4). The Defendants' Website and Defendants' Social Media offer fireworks for sale under the mark, "Showtime Fireworks Orlando" and use the logo below (the "Infringing Mark") (Doc. 1, ¶ 27 and Warzecha Declaration, Exhibits A-1 through A-4):



Further, as admitted by Defendants by default, at all times relevant, Defendants have had knowledge and notice of Plaintiff's ownership of the SHOWTIME Marks, including Plaintiff's exclusive right to use and license such intellectual property and the goodwill associated therewith, at least since receipt of Plaintiff's cease and desist letter dated August 31, 2021 (Doc. 1, ¶ 33). Defendants do not have, nor have they ever had, the right or authority to use the SHOWTIME Marks for any purpose (Doc. 1, ¶ 28). Despite such knowledge and notice, Defendants continue to willfully infringe Plaintiff's SHOWTIME Marks, trade on the goodwill associated with Plaintiff, cause mistake, and deceive the consuming public as to the affiliation, connection, or association of Defendants with Plaintiff (Doc. 1, ¶¶ 34, 36 and 37).

## III.    Argument

### a.   Default Judgment Should be Entered Against Defendants

A court may order a default judgment pursuant to Fed. R. Civ. P. 55(b)(2) following the entry of default by the court clerk under Rule 55(a). See, Fed. R. Civ. P. 55. Upon entry of default by the Clerk, the well-pled factual allegations of a plaintiff's complaint, other than those related to damages, will be taken as true. *PetMed Express, Inc. v. Medpets.com*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004) (citing *Buchanan v. Bowman*, 820 F.2d 359 (11th Cir. 1987)). Before entering default judgment, the Court must ensure that it has jurisdiction over the claims and parties, and that the well-pled factual allegations, which are assumed to be true, adequately state a claim for which relief may be granted. *24-7 Bright Star Healthcare, LLC v. Brightstars Helping Hands LLC*, WL 5566570, at *1 (M.D. Fla. July 24, 2023) (internal citations omitted). If default judgment is warranted, then the court must next consider whether the Plaintiff is entitled to the relief requested. *Id*. In the instant case, the allegations and exhibits in the Verified Complaint clearly demonstrate that default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against Defendants and the Plaintiff is entitled to the relief requested.

### b.   This Court's Jurisdiction Over Claims and Parties

This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367 (Doc. 1, ¶ 3). This Court has personal jurisdiction

over Defendant SHOWTIME FIREWORKS ORLANDO LLC, as it is a limited liability company with ten different locations across the State of Florida, with its principal place of business in Oviedo, Florida (Doc. 1, ¶ 6). Similarly, this Court has personal jurisdiction over Defendant SHOWTIME FIREWORKS & SOUVENIRS LLC, as it is a limited liability company with its principal place of business in Deland, Florida (Doc. 1, ¶ 7).

### c. **Plaintiff's Factual Allegations Establish Defendants' Liability**

#### i. **Federal Trademark Infringement (Counts I and II) and Common Law Unfair Competition (Counts III and IV)**

Federal claims for trademark infringement are governed by the Lanham Act, which "provides liability for trademark infringement if, without the consent of the registrant, a defendant uses 'in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark ... with which such use is likely to cause confusion, or to cause mistake, or to deceive.'" 15 U.S.C. § 1114(1)(a). In order for Plaintiff to prevail on its federal trademark infringement claims under Section 32 of the Lanham Act (Counts I and II), Plaintiff must demonstrate: (1) ownership of the trademarks at issue; (2) the defendant's use of the trademarks is without the plaintiff's authorization; and (3) the defendant's use is likely to cause confusion, mistake, or deception as to the source, affiliation, or sponsorship of defendant's goods." *Delta T, LLC v. Kale Fans America S.A. De C.V.*, 2020 WL 1674328 at *2 (M.D. Fla. Feb. 25, 2020). See also, *Nakava LLKC v. South Pacific Elixir Company*, 2020 WL 4601641 at *3 (S.D. Fla. Aug. 10, 2020). The Eleventh Circuit uses the following seven factors to

determine likelihood of confusion: "(1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) actual confusion." *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1239 (11th Cir. 2008). See also, *Alliance Metals, Inc., of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 907 (11th Cir. 2000).

The test to determine trademark infringement liability under Florida common law is the same as the likelihood of consumer confusion test outlined in § 32(a) of the Lanham Act. See, *PetMed Express, Inc.* at 1217-18 and *Rolex Watch U.S.A., Inc. v. Forrester*, No. 83-8381-CIV-PAINE, 1986 WL 15668, *3 (S.D. Fla. Dec. 9, 1986). Therefore, the Court may analyze the federal trademark infringement and common law unfair competition counts together. The well-pled factual allegations of Plaintiff's Verified Complaint, including specifically those pled in Paragraphs 9-37, 39-41, 44-46, 49-50 and 52-53 (Doc. 1), and the evidence submitted herewith, establish all elements for each claim of federal trademark infringement and common law unfair competition.

### ii.  **Federal Trademark Counterfeiting (Counts V and VI)**

The Lanham Act also prohibits, among other things, the use in commerce of a counterfeit trademark in a manner likely to cause confusion; and the Act further provides that anyone using a counterfeit trademark in such manner shall be liable in a

civil action to the registrant of the trademark." *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1475 (11th Cir.1991) (citing 15 U.S.C.A. § 1114(1)(a)). See also, *Bentley Motors Corp. v. McEntegart*, 976 F. Supp. 2d 1297, 1312 (M.D. Fla. 2013). "A counterfeit mark is defined as 'a spurious mark which is identical with, or substantially indistinguishable from, a registered mark.'" *Bentley Motors* at 1312 (quoting 15 U.S.C. § 1127). "[A] showing of intent or bad faith is unnecessary to establish a violation of § 1114(1)(a), or to seek remedies pursuant to § 1117(a)." *Chanel* at 1476. The well-pled factual allegations of Plaintiff's Verified Complaint, including specifically those pled in Paragraphs 9-37, 55-56 and 59-60 (Doc. 1), and the evidence submitted herewith, establish all elements for Plaintiff's claims of federal trademark counterfeiting.

### iii. <u>Federal Cyberpiracy (Count VII)</u>

Plaintiff's Verified Complaint also sets forth a cause of action for cybersquatting pursuant to the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). To prevail under 15 U.S.C. § 1125(d), Plaintiff must demonstrate that "(1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit." *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 Fed. Appx. 252, 256, 2006 WL 2847233, at *3 (11th Cir. 2006).  See, 15 U.S.C. § 1125(d). The well-pled factual allegations of Plaintiff's Verified Complaint, including specifically those pled in Paragraphs 9-37 and 63-65 (Doc. 1), and the evidence submitted herewith, establish all elements for Plaintiff's claim of federal cyberpiracy.

In summary, the factual allegations in the Verified Complaint, taken as true pursuant to *PetMed Express* and substantiated by the evidence submitted herewith, conclusively establish Defendants' liability under each of the claims asserted in the Verified Complaint. Accordingly, default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against both Defendants.

### d.  Plaintiff's Requested Relief Should be Granted

### i.  Entry of a Permanent Injunction is Appropriate

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *24-7 Bright Star Healthcare, LLC* at \*3. "Injunctive relief is available against defaulting defendants." *Id*. (internal citations omitted).

Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiff to prevent further infringement absent an injunction. See, *Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1290 (S.D. Fla. 2016) citing *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief."). Pursuant to 15 U.S.C. § 1116, this Court should permanently enjoin

Defendants from continuing to infringe any of Plaintiff's intellectual property rights, including the SHOWTIME Marks.

Permanent injunctive relief is appropriate where a plaintiff demonstrates (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006). As demonstrated herein, Plaintiff has clearly carried its burden, warranting permanent injunctive relief.

Defendants' actions merit permanent injunctive relief, not only to protect Plaintiff's reputation, but also to protect consumers from being deceived as to the quality and source of products bearing Plaintiff's trademarks. The facts alleged in Plaintiff's Verified Complaint, substantiated by the evidence submitted herewith, show Defendants are continuously infringing the SHOWTIME Marks by using them to advertise, promote, and sell goods bearing marks which are identical or confusingly similar to the SHOWTIME Marks (Doc. 1, ¶¶ 24-37 and Warzecha Declaration, Exhibits A-1 through A-4).

Plaintiff is clearly suffering, and will continue to suffer, irreparable injury if Defendants' infringing activities are not permanently enjoined (Doc. 1, ¶¶ 42, 47, 57, 61 and p. 14, ¶¶ 1-4). In trademark cases, "a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); see also, *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There

is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales."). Plaintiff's Verified Complaint sufficiently establishes that Plaintiff's services are similar to the services offered by Defendants, that the parties operate in the same industry, and that Defendants' use of the SHOWTIME Marks creates confusion among customers (Doc. 1, ¶¶ 9, 11, 24, 29, 36-37). Plaintiff's Verified Complaint also sufficiently establishes that Defendants' unlawful actions have caused irreparable injury to Plaintiff and will continue to do so if Defendants are not permanently enjoined (Doc. 1, ¶¶ 42, 47, 57, 61 and p. 14, ¶¶ 1-4). Defendants have defaulted upon Plaintiff's factual allegations in both respects.

Next, Plaintiff has no adequate remedy at law so long as Defendants continue to use the SHOWTIME Marks in connection with the operation of its fireworks business. See, *24-7 Bright Star Healthcare* at *7, citing *RCI TM Corp. v. R&R Venture Grp., LLC*, 2015 WL 668715, at *7 (M.D. Fla. Feb. 17, 2015) (stating that the Eleventh Circuit has noted there is "generally no adequate remedy at law" for trademark infringement cases). Plaintiff will have zero control of the quality of what appears to be its products in the marketplace. An award of monetary damages alone will not cure the injury to Plaintiff's reputation and goodwill which will result if Defendants' infringing and counterfeiting actions are allowed to continue.

It can hardly be said that Defendants face hardship in refraining from their willful infringement of Plaintiff's SHOWTIME Marks, whereas Plaintiff faces hardship from loss of sales and its inability to control its reputation. In reality,

Defendants have no cognizable hardship, as they will be prohibited from selling counterfeit goods, which is an illegal act to begin with.

Finally, the public has an interest in the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' products. See, *24-7 Bright Star Healthcare* at *4, citing *Chanel, Inc. v. Replicachanelbag*, 362 F. Supp. 3d 1256, 1264 (S.D. Fla. 2019). Ultimately, the permanent injunction will prevent consumer confusion and deception in the marketplace and will protect Plaintiff's rights and interest in its SHOWTIME Marks, which are the touchstones of trademark law.

Therefore, to effectuate the injunction as a practical matter, Defendants' Website and Defendants' Social Media used by Defendants to promote, advertise, offer for sale, and sell their infringing and counterfeit products should be permanently disabled. Furthermore, Defendants, their agents or assigns, should be required to assign all rights, title, and interest to Defendants' Website and Defendants' Social Media to Plaintiff (Doc. 1, ¶ 25-26 and Warzecha Declaration, Exhibits A-1 through A-4). Absent such transfer, Defendants will remain free to continue infringing Plaintiff's trademarks and will continue to benefit from the internet traffic to the website and social media accounts built through the unlawful use of the SHOWTIME Marks. Plaintiff requests entry of a permanent injunction as described in the prayer for relief in Plaintiff's Verified Complaint (Doc. 1, pp. 14-16).

### ii.  Attorneys' Fees and Costs

The prevailing party in a trademark infringement claim under 15 U.S.C. § 1114 and/or § 1125(a) is entitled an award of its reasonable attorneys' fees in "exceptional

cases." 15 U.S.C. § 1117(a). An exceptional case is one which "stands out from the others with respect to the substantive strength of a party's litigating position." *Tobinick v. Novella*, 884 F.3d 1110, 1115 (11th Cir. 2018). In other words, a case is "exceptional" where the defendant's conduct is willful and deliberate. *PetMed Express* at 1222.

This matter is an exceptional case.  Defendants willfully and deliberately used the Infringing Mark, with full knowledge that it infringed on Plaintiff's rights in the SHOWTIME Marks (Doc. 1, ¶ 32-34). Defendants have had knowledge and notice of Plaintiff's ownership of the SHOWTIME Marks, including Plaintiff's exclusive right to use and license such intellectual property and the goodwill associated therewith, at least since receipt of Plaintiff's cease and desist letter dated August 31, 2021 (Doc. 1, ¶ 33). Moreover, Defendants' failure to respond to Plaintiff's Verified Complaint, despite a telephone conference with Plaintiff's counsel and multiple Orders from the Court regarding consequences for failing to respond, and Defendants' failure to cease use of the SHOWTIME Marks evidence their willful and deliberate intent. Finally, Defendants appear to still be using the Infringing Mark as of the filing of this Motion, even though default has been entered, further evidencing willful and deliberate intent. See, Warzecha Declaration, Exhibit A-4. As such, this is an "exceptional" case under the Lanham Act, and Plaintiff is entitled to recover its attorneys' fees.

### iii.   Damages for Trademark Counterfeiting (Counts V and VI)

In a case involving the use of counterfeit marks in connection with a sale, offering for sale or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered

in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(1). In addition, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Plaintiff elects to recover an award of statutory damages as to Counts V and VI of its Verified Complaint.

The Court has wide discretion to set an amount of statutory damages. *PetMed Express, Inc.* at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990). Indeed, an award of statutory damages is an appropriate remedy, despite a plaintiff's inability to provide actual damages caused by a defendant's infringement. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent."). See also, *PetMed Express, Inc.* at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure"). This case is no exception.

A defendant's intent can be of probative value for establishing willfulness, triggering an enhanced statutory award. *PetMed Express, Inc.* at 1220. "In cases alleging willful infringement, the defendants' willfulness is established by virtue of their default." *S Holistic, LLC v. Purple Haze of Seminole, LLC*, 2023 WL 3629705, at *7 (M.D. Fla. May 8, 2023), report and recommendation adopted, 2023 WL 3620654 (M.D. Fla. May 24, 2023). See also, *PetMed Express, Inc.* at 1217 (upon default, well plead

allegations taken as true); *Chanel, Inc.*, 240 F. Supp. 3d at 1292; *Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV, 2007 WL 3047143 at *7 (S.D. Fla. Oct. 18, 2007), ("PEI's allegation that URI intentionally, knowingly, and willfully infringed upon PEI's trademarks has been established by the default."); *Arista Recs., Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003).

Here, the evidence clearly establishes Defendants copied the SHOWTIME Marks for the purpose of deriving the benefit of Plaintiff's well known reputation in the fireworks industry. Further, Defendants defaulted on Plaintiff's allegations of willfulness (Doc. 1, ¶¶ 34, 41, 46). As such, this Court should award a significant amount of statutory damages under the Lanham Act to ensure Defendants do not continue their intentional and willful counterfeiting activities. The evidence in this case demonstrates that the Defendants (promoted, distributed, advertised, offered for sale, and/or sold goods bearing and/or using marks which were in fact a counterfeit of Plaintiff's SHOWTIME Marks (Doc. 1, ¶ 24-37, 55-56, 59-60). See also, Warzecha Declaration, Exhibits A-1 through A-4. Based upon this evidence and Defendants' default, it is reasonable to infer each Defendant's infringement was willful. Plaintiff is requesting a statutory damages award of five hundred thousand dollars ($500,000.00) for Count IV and five hundred thousand dollars ($500,000.00) for Count V against Defendants, jointly and severally.[2]

---

[2] Plaintiff's Verified Complaint alleges that the individual Defendants are one and the same and the alter ego of the other (Doc. 1, ¶ 8).

### iv.  <u>Damages for Cyberpiracy (Count VII)</u>

As admitted by default, and established by the evidence submitted herewith, Defendants have acted with the bad faith intent to profit from the SHOWTIME Marks and the goodwill associated therewith by registering a domain name for Defendants' Website that is identical, confusingly similar to, or dilutive of the SHOWTIME Marks. (Doc. 1, ¶¶ 63-65).  The domain name for Defendants' Website incorporates the SHOWTIME Marks in their entirety (Doc. 1, ¶¶ 25, 63-65). See also, Warzecha Declaration, Exhibits A-1 and A-4.

Furthermore, it is indisputable that Plaintiff's SHOWTIME Marks are famous and distinctive (Doc. 1, ¶18). Plaintiff has used the '282 Mark in commerce throughout the United States in continuously since at least May 18, 1993 in connection with fireworks and firecrackers, and has used the '781 Mark since at least March 14, 2003 in connection with retail store services featuring fireworks and firecrackers (Doc. 1, ¶16). Plaintiff has been an industry leader in the consumer fireworks industry for over fifty years and is one of the largest importers and distributors of fireworks in the United States, which has been admitted by Defendants by default (Doc. 1, ¶ 9). Since Plaintiff is well known in the consumer fireworks industry for its high-quality products, customer service, and reliability, the SHOWTIME Marks enjoy widespread recognition and are prominent in the minds of the consuming public (Doc. 1, ¶ 11).

Upon a finding of liability, the ACPA expressly empowers the Court to "order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(1)(c). Therefore, Plaintiff is entitled to

the transfer and ownership of the domain name for Defendants' Website, www.showtimefireworksorlando.com. Additionally, Plaintiff may elect at any time before final judgment to recover actual damages or statutory damages of not less than $1,000.00 and not more than $100,000.00 per domain name, as the court considers just. 15 U.S.C. § 1117(d). Plaintiff elects statutory damages and submits that in view of the Defendants' intentional, wrongful behavior, an award in the amount of $50,000.00 against the Defendants would be just.

## IV.    <u>Conclusion</u>

For the foregoing reasons, Plaintiff respectfully requests the Court enter final default judgment finding Defendants liable on all counts of Plaintiff's Verified Complaint, a permanent injunction, and an award of relief as described in the Verified Complaint (Doc. 1, pp. 14-17).

Dated: September 1, 2023

*/s/ Mark Warzecha*
Mark F. Warzecha
Florida Bar No. 0095779
Jessica Honeycutt
Florida Bar No. 1025604
**WIDERMAN MALEK, PL**
1990 West New Haven Ave., Suite 201
Melbourne, FL 32904
Phone: (321) 255-2332
Fax: (321) 255-2351
MFW@USLegalTeam.com
JHoneycutt@USLegalTeam.com
***Attorneys for Plaintiff***

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 1, 2023, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all attorneys of record. A copy of the foregoing was served upon the *pro se* Defendants via email to [showtimefireworksorlando@gmail.com](mailto:showtimefireworksorlando@gmail.com) and US Mail to Adam Hernandez, 7904 Emu Court, Orlando, Florida 32822.

*/s/ Mark F. Warzecha*
Mark F. Warzecha